**Alford CUNNINGHAM, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 7, 1969.

David R. Reed, Jr., Reed, Scent & Reed, Paducah, for appellant.

John B. Breckinridge, Atty. Gen., Ben M. Combs, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Alford Cunningham appeals from an order overruling his RCr 11.42 motion to vacate a judgment or judgments sentencing him to a total of 21 years in the penitentiary on four charges of storehouse breaking (KRS 433.190), one charge of automobile theft (KRS 433.220), one charge of armed assault with intent to rob (KRS 433.150), and one charge of malicious cutting and wounding (KRS 435.170).

While awaiting trial on the first six of these charges Cunningham was involved in an attempted jailbreak in which a deputy jailer of McCracken County was stabbed. This incident resulted in the additional charge of malicious cutting and wounding. He was represented by appointed counsel and pleaded guilty to all seven charges. His motion to vacate the convictions alleged that he had been denied the effective assistance of counsel and that his plea or pleas of guilty had been given involuntarily "under threat of severe bodily harm or death." The trial court appointed new counsel for him and granted a hearing, which was transcribed. He has been permitted to appeal *in forma pauperis* and has been ably represented by his appointed counsel in this court as well as in the trial court.

The claim of ineffective assistance of counsel is not pressed on the appeal, but it is earnestly contended that the evidence

presented at the hearing compels a factual conclusion that the guilty plea or pleas were not voluntary. The principal basis claimed for this contention is that Cunningham was mistreated and pressured to plead guilty during the 47-day interim between the attempted but unsuccessful jailbreak and the date on which his plea was entered.

Cunningham was arrested and taken before the Paducah Police Court in February of 1967 on the six charges first mentioned. With the advice and assistance of appointed counsel he waived an examining trial and, being unable to meet the bail bond set by the police court, was lodged in the McCracken County Jail pending action of the grand jury. The attempted jailbreak took place on April 6, 1967. Whether and the extent to which Cunningham participated in it is not material; in any event, the local law enforcement authorities concluded that he was implicated, and after a delay of some two weeks he was transferred to an inner compartment of the jail called the Black Cat and there confined until May 23, 1967, the day on which he was arraigned and, again with the advice and assistance of the same attorney who had been appointed for him in the police court, pleaded guilty to the seven charges with which we are concerned.

■ According to Cunningham's testimony, he was given no food for four days after the jailbreak incident and from then on was given only one meal every three days until he was put in the Black Cat and one meal per day thereafter. He says that on one occasion King, the deputy jailer who had been stabbed, kicked and beat him and knocked three of his teeth out. He says also that King repeatedly cursed him and told him the only way he could get better treatment would be through a decision to plead guilty on all of the pending charges, and that he was not allowed any communication with the outside world. King denied that he ever struck Cunningham or in any manner sought to persuade him to plead guilty. The McCracken County Jailer denied also that Cunningham was prevented from calling an attorney. Photographs of Cunningham's face taken on February 20 and May 29, 1967, look remarkably similar and give credence to the trial court's finding that no bodily harm was inflicted upon him in the jail. So far as our review is concerned, the trial court's findings are fully supported unless the undisputed facts force a different conclusion as a matter of law. We therefore proceed now to the information that is substantially undisputed.

The Black Cat contains four small cubicles for solitary confinement. They are kept lighted around the clock. The bed consists of a metal rack on which a mattress can be placed, but Cunningham was not furnished a mattress. Each cubicle contains adequate toilet facilities and has one door and one window, the latter of which, in Cunningham's instance, was kept closed. Whether or not Cunningham went without food for four days after April 6, 1967, and was then given but one meal every three days until transferred to the Black Cat, all of which is disputed, it is admitted that he was given only one meal per day thereafter. Neither at the time of his arraignment nor at the allocution did he mention any of his alleged mistreatment to the trial court, and there is no evidence that he reported it to his counsel.

At some time shortly after being placed in the McCracken County Jail Cunningham sent word to the Commonwealth's Attorney for the purpose of discussing his prospects in the event of guilty pleas. He had at least four previous felony convictions, and during this first discussion the Commonwealth's Attorney declined to settle for less than a life sentence, advising Cunningham that he could have him indicted under the Habitual Criminal Act on all six counts. The first meeting ended without agreement, but some time later, on March 22, 1967, the Commonwealth's Attorney offered to settle for a total of 21 years, and although Cunningham says he was still holding out for 10 years and never did

agree on 21 years, he at this time signed written confessions, drawn up by the Commonwealth's detective, on the six offenses then under discussion.

The trial court found specifically that Cunningham was neither threatened nor subjected to any cruel treatment of such nature as to induce a plea of guilty. There was no express finding with respect to whether King, the deputy jailer, sought by word of mouth, as Cunningham testified, to persuade him to plead guilty, but we think the negative is implicit from the tenor of the final order and the judge's remarks at the close of the hearing. Such a conclusion is justified by the forthright manner in which King testified. He was frank to admit several things an untruthful witness might well have tried to deny or evade. His testimony had the ring of truth.

■ There was also no finding or conclusion as to whether the threat of indictments under the Habitual Criminal Act had the effect of undermining or destroying the voluntariness of Cunningham's choice to plead guilty; nor is the point urged on the appeal. Since, however, it was an inseparable factor in the circumstances leading to Cunningham's pleading guilty and presents a question likely to arise in other cases, we believe it would serve a useful purpose to comment on it.

When Cunningham did finally and formally plead guilty the indictments had been returned, none of them having been drawn under the Habitual Criminal Act. Assuming, however, that the Commonwealth's Attorney was still in a position, in the event Cunningham had then chosen to plead not guilty, to resubmit the cases to the grand jury and ask for new indictments under the Habitual Criminal Act, we are of the opinion nevertheless that this is not the kind of pressure that could be held to affect the voluntariness of a guilty plea. A person charged with a criminal offense always is under the pressure of risking a maximum sentence at the hands of the jury or the court if he does not accede to what the Commonwealth is willing to recommend. The more serious the offense, the greater is the pressure, and it is even more so when the Commonwealth has a strong case. To say that the attorney for the Commonwealth could not use these advantages in discussing the terms and prospects of settlement on the basis of a guilty plea would mean simply that there could be no such settlements. We are unwilling to accept that result.

■ The ultimate proposition on which Cunningham rests his case in this court is that his treatment in the McCracken County Jail between April 6, 1967, and May 23, 1967, "was of such magnitude and of such duration and intensity so as to make his plea of guilty a product of duress and intimidation and not in fact the voluntary act of Appellant."

Citing United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1967), in which that portion of the Federal Kidnaping Act, 18 U.S.C. § 1201(a), providing for the death penalty if recommended by the jury was held violative of the Fifth Amendment because its effect was to discourage assertion of the right to plead not guilty, Cunningham says the United States Supreme Court has thus recognized that something less than direct coercion may be sufficient to deprive a guilty plea of its necessarily voluntary character. He contends that the onerous conditions to which he was subjected, and the prospect of their indefinite continuation into the future had he chosen to go to trial on seven indictments, reduced him to such desperation that he was willing to accept any terms in order to get out of the McCracken County Jail.

In the abstract, this is a good argument. We do not doubt that a prisoner's free agency could be substantially eroded or destroyed by cruel treatment. But without presuming to pass on the manner in which the McCracken County Jail is run, we accept the trial court's factual determination

that Cunningham was not treated as badly as he would have it believed. Those to whom the unpleasant task of a prison keeper is committed must have disciplinary powers to discourage and deter possible attempts at escape. Whether an excessive exercise of such power actually has had the effect of disabling a prisoner in the free exercise of his constitutional rights is primarily a question of fact to be resolved by a court after hearing the evidence. If there is room for an honest difference of opinion among reasonable men as to the import of the evidence, the factual determination made by the court is final. In this instance the trial court found that the discomforts to which Cunningham was subjected did not actually induce him to plead guilty. Under the evidence presented we cannot say that finding was unreasonable.

The judgment is affirmed.

All concur.